# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:16-cv-00151-MR
### (CRIMINAL CASE NO. 1:02-cr-00089-MR-1)

| | |
|---|---|
| GREGORY ALLEN OAKS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [CV Doc. 1][1] and the Government's Motion to Dismiss [Doc. 7]. The Petitioner is represented by Ann L. Hester of the Federal Defenders of Western North Carolina.

## I.    BACKGROUND

In October 2002, the Petitioner Gregory Allen Oaks was charged in a Bill of Indictment with one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) ("Count One"); one count of

_____

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 1:16-cv-00151-MR, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 1:02-cr-00089-MR-1.

using a firearm during and in relation to a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) ("Count Two"); and one count of possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). [CR Doc. 1: Indictment]. The Petitioner faced a maximum term of imprisonment of 20 years for Count One, see 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), and a mandatory consecutive sentence of not less than 7 years to life for Count Two, see 18 U.S.C. § 924(c)(1)(A). As for Count Three, as charged, the Petitioner faced a statutory maximum of 10 years, see 18 U.S.C. § 924(a)(2). However, the Government subsequently filed a Notice, advising the Petitioner that the Government intended to prosecute him as an Armed Career Criminal pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), in light of the Petitioner's prior convictions for the following:

(1) A 1979 Tennessee conviction for Criminal Sexual Conduct in the First Degree, for which the Petitioner was sentenced to a term of 15 years' imprisonment;

(2) A 1985 North Carolina conviction for Assault with a Deadly Weapon Inflicting Serious Injury ("AWDWISI"), for which the Petitioner was sentenced to a term of three years' imprisonment;

(3) A 1987 Tennessee conviction for Aggravated Assault, for which the Petitioner was sentenced to a term of two years' imprisonment;

(4)    A 1993 Tennessee conviction for Felony Escape, for which the Petitioner was sentenced to a term of one year's imprisonment; and

(5)    A 1993 Tennessee conviction for Aggravated Robbery, for which the Petitioner was sentenced to a term of eight years' imprisonment.

[CR Doc. 15: ACCA Notice].  This Notice increased the Petitioner's potential maximum punishment to a term of 15 years to life.  See 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

In March 2003, a jury found the Petitioner guilty on all three counts. [CR Doc. 34: Jury Verdict].  In preparation for sentencing, a probation officer prepared a Presentence Report (PSR).   In calculating the Petitioner's offense level, the probation officer classified the Petitioner as both an armed career criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4 and a career offender under U.S.S.G. § 4B1.1.  [CR Doc. 77: PSR at 7 ¶ 36].  Because the offense level for armed career criminal was greater than that for career offender, see U.S.S.G. § 4B1.4, the probation officer recommended applying the armed career criminal offense level, for a total offense level (TOL) of 34. [Id.].  As for the Petitioner's criminal history, the probation officer calculated a total of 10 criminal history points, which would have established a criminal history category (CHC) of V.  However, because of the application of the Armed Career Criminal Act, see U.S.S.G. § 4B1.4(c)(2), the Petitioner's CHC

became VI. [Id. at 13 ¶ 58]. Based on a TOL of 34 and a CHC of VI, the Petitioner's Guidelines range was calculated to be 262 to 327 months, plus a mandatory consecutive sentence of not less than 7 years for Count Two. [Id. at 21 ¶ 110].

The Petitioner's sentencing hearing was held on January 29, 2004, before the Honorable Lacy H. Thornburg, United States District Judge.[2] At the hearing, the Court adopted the Guidelines range as calculated in the PSR and sentenced the Petitioner to a term of 240 months' imprisonment on Count One; a term of 300 months' imprisonment on Count Three, to run concurrently with Count One; and a term of 84 months on Count Two, to run consecutively to Counts One and Three, for a total of 384 months' imprisonment. [CR Doc. 52].

The Petitioner appealed. [CR Doc. 51]. On appeal, the Fourth Circuit Court of Appeals affirmed the Petitioner's convictions but vacated the sentence and remanded for resentencing due to the lack of factual findings to support the brandishing enhancement for the § 924(c) conviction. [See CR Doc. 58]. On remand, the Court made the requisite findings to support the brandishing enhancement and sentenced the Petitioner to the same sentence. [CR Doc. 67]. The Petitioner again appealed [CR Doc. 64], and

---

[2] Following Judge Thornburg's retirement, this matter was reassigned to the undersigned.

his convictions and sentence were affirmed on August 31, 2007.  [CR Doc. 78].

On June 6, 2016, the Petitioner filed the present motion to vacate his sentence under 28 U.S.C. § 2255, arguing that his sentence was improperly enhanced under the ACCA in light of Johnson v. United States, 135 S. Ct. 2551 (2015).  [CV Doc. 1].  Upon the request of the Government, this matter was stayed pending the Supreme Court's decision in Beckles v. United States, 137 S. Ct. 886 (2017).  [CV Doc. 6].  Following the Beckles decision, the Government filed a motion to dismiss the Petitioner's motion.  [CV Doc. 7].  The Petitioner filed a response in opposition to the motion to dismiss. [CV Doc. 8].   At the request of the Court [CV Doc. 9], the parties filed supplemental briefs in April 2018 [CV Docs. 10, 11].

Having been fully briefed, this matter is ripe for disposition.

## II.    STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the argument presented by the Petitioner can be resolved without an

evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.   DISCUSSION

### A.   Procedural Default

The Government first argues that the Petitioner's Johnson claim is subject to dismissal because he failed to raise such claim on direct review and he has not shown cause or prejudice to excuse that procedural default. In support of this argument, the Government cites Whiteside v. United States, in which the Fourth Circuit noted that "alleged futility cannot serve as 'cause' for a procedural default in the context of collateral review." 775 F.3d 180, 185 (4th Cir. 2014) (en banc), cert. denied, 135 S. Ct. 2890 (2015).

It is well-established that where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised on collateral review only if the defendant can first demonstrate cause and actual prejudice or that he is actually innocent of the conviction he challenges. Bousley v. United States, 523 U.S. 614, 622 (1998); see also Trevino v. Thaler, 569 U.S. 413, 421 (2013) ("A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law.") (quoting Martinez v. Ryan, 566 U.S. 1, 10 (2012)). With respect to the cause-and-prejudice standard, a petitioner must

demonstrate (1) the existence of cause for a procedural default that "turns on something external to the defense"; and (2) "actual prejudice resulting from the errors of which he complains." United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010) (citations omitted).

There are, however, exceptions to this cause-and-prejudice standard. In Reed v. Ross, the Supreme Court recognized three specific situations in which the novelty of a constitutional claim would operate as the functional equivalent for "cause" relieving a defendant's failure to raise the issue directly:

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overturn a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprove a practice this Court arguably has sanctioned in prior cases.

468 U.S. 1, 17 (1984) (internal citations, alterations, and quotation marks omitted).

This case falls within the second category of cases identified by Reed. When the Petitioner was sentenced in 2006, there was a "longstanding and widespread practice" of imposing punishment under the residual clause and a "unanimous body of lower court authority" approving the use of the residual clause. See id. The Fourth Circuit had expressly ruled that the "ACCA is

not void for vagueness." United States v. Presley, 52 F.3d 64, 68 (4th Cir.), cert. denied, 516 U.S. 891 (1995). Every other circuit to consider the issue also had expressly rejected the type of void-for-vagueness challenges that ultimately prevailed in Johnson. See, e.g., United States v. Childs, 403 F.3d 970 (8th Cir.), cert. denied, 546 U.S. 954 (2005); United States v. Sorenson, 914 F.2d 173, 175 (9th Cir. 1990), cert. denied, 498 U.S. 1099 (1991); United States v. Veasey, No. 95-5060, 1995 WL 758439, *2 (6th Cir. Dec. 21, 1995) (unpublished). Thus, under Reed, the Petitioner has established "cause" for failing to raise a vagueness challenge to the ACCA's residual clause on direct appeal. See Reed, 468 U.S. at 17 ("By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a state court to adopt the position that this Court has ultimately adopted. Consequently, the failure of a defendant's attorney to have pressed such a claim before a state court is sufficiently excusable to satisfy the cause requirement."); see also Casper v. United States, No. 1:16-cv-00122-MR, 2016 WL 3583814, at *4 (W.D.N.C. July 1, 2016) (applying Reed to find "cause" to exclude procedural default of unappealed Johnson claim).

Since the Petitioner's <u>Johnson</u> claim falls within the second category of cases noted by <u>Reed</u>, the Court finds that the Petitioner has shown cause excusing his procedural default for failing to raise his vagueness challenge to the ACCA in his prior proceedings.[3]   Further, the Petitioner has demonstrated actual prejudice in that, assuming that his <u>Johnson</u> argument is correct, he received a sentence with respect to Count Three in excess of the statutory maximum sentence to which he would have otherwise been subjected without the ACCA enhancement, both with respect to the term of imprisonment and the term of supervised release.

Notwithstanding these facts, the Government contends that the Petitioner cannot show that his designation as an armed career criminal affected his sentence.  While conceding that the Petitioner could not have received a sentence of 300 months for his felon-in-possession offense alone, the Government argues that he could nevertheless have been properly sentenced to a total term of 300 months in prison, with or without his statutory

---

[3] The Government does not acknowledge <u>Reed</u> in its brief, relying instead solely on the general futility principle applied by the Fourth Circuit in <u>Whiteside</u>. <u>Whiteside</u>, however, is inapplicable to the present action, as that case addressed whether the petitioner was entitled to relief under the Fourth Circuit's decision in <u>Simmons v. United States</u>, 649 F.3d 237 (4th Cir. 2011) (<u>en banc</u>), and not a situation where the Supreme Court overruled one of its own precedents. The Supreme Court had never spoken on the contested legal issue addressed in <u>Whiteside</u>; it only involved the Circuit Court overruling one of its own precedents.  As a result, the <u>Reed</u> exception was inapplicable and the case was controlled by the principle of general futility.

designation as an armed career criminal. See U.S.S.G. § 5G1.2(d). While the Government's argument is technically correct, the Guidelines range used by the Court in imposing that sentence was clearly impacted by his statutory designation as an armed career criminal. While the Court *could* have reached the same overall sentence, without the ACCA designation, there is nothing in the record to indicate that it would have.

It should be noted that the Petitioner's designation as an armed career criminal affected his sentence on Count One, the drug-trafficking conviction, as well as his firearms conviction. Without the ACCA designation, Petitioner was still a Career Offender.[4] Based thereon his advisory Guidelines range would have been at the lower level of 210 to 262 months (TOL 32, CHC VI).

As the Petitioner has demonstrated both cause and actual prejudice for his failure to assert a challenge to his armed career criminal status on direct review, the Court concludes that his present claim has not been procedurally defaulted.

---

[4] It is undisputed that the Petitioner has the two required Career Offender predicates. The Petitioner's Tennessee aggravated robbery conviction falls squarely within the enumeration clause of U.S.S.G. § 4B1.2(a)(2), and the Petitioner' sexual offense conviction is unquestionably a crime of violence.

## B.     Petitioner's ACCA Designation

Having determined that the Petitioner's <u>Johnson</u> claim has not been procedurally defaulted, the Court turns to the issue of whether the Petitioner still has three predicate convictions to qualify as an armed career criminal under the ACCA.

The ACCA provides for a mandatory minimum term of fifteen years' imprisonment for any defendant who violates 18 U.S.C. § 922(g) and who has three previous convictions for a "violent felony" or a "serious drug offense."   18 U.S.C. § 924(e)(1).   When the Petitioner was sentenced, a "violent felony" was defined to include any crime punishable by a term of imprisonment exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another [the "force clause"]; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives [the "enumerated offense clause"], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the "residual clause"].

<u>Id.</u> § 924(e)(2)(B).

In <u>Johnson</u>, the Supreme Court struck down the ACCA's residual clause as unconstitutionally vague.   <u>Johnson</u>, 135 S. Ct. at 2563.   As a result of <u>Johnson</u>, a defendant who was sentenced to a statutory mandatory

minimum term based on a prior conviction that satisfies only the residual clause of the "violent felony" definition is entitled to relief from his sentence. See United States v. Newbold, 791 F.3d 455, 460 (4th Cir. 2015) (holding that the improper imposition of an ACCA-enhanced sentence is an error that is cognizable in a motion to vacate filed under 28 U.S.C. § 2255). The Supreme Court has held that Johnson is retroactively applicable to claims asserted on collateral review. Welch v. United States, 136 S. Ct. 1257, 1265 (2016).

Here, the Petitioner does not dispute that his prior Tennessee conviction for Criminal Sexual Conduct in the First Degree qualifies as a "violent felony" for the purposes of the ACCA. Moreover, the Government does not appear to contest that the Petitioner's prior Tennessee conviction for Felony Escape is *not* a "violent felony" within the meaning of the Act. As for the North Carolina offense of AWDWISI, the Court has already concluded that because it is not a divisible offense, and because the state can obtain a conviction based upon a showing of culpable negligence, AWDWISI is categorically not a "violent felony" within the meaning of the ACCA's force clause. Moore v. United States, No. 1:16-cv-00147-MR, 2018 WL 1368362, at *8 (W.D.N.C. Mar. 16, 2018). Thus, the Petitioner's ACCA designation can stand only if his remaining two prior convictions – his Tennessee

conviction for aggravated assault and his Tennessee conviction for aggravated robbery -- still qualify as "violent felonies" in light of Johnson.

### 1. Tennessee Aggravated Robbery

The Court first turns to the offense of aggravated robbery under Tennessee law. As this offense does not fall within the enumerated offense clause, the Petitioner's prior conviction may still qualify as a "violent felony" only if the offense falls within the so-called "force clause" and thus "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The Supreme Court has defined "physical force" as used in the ACCA as "violent force -- that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010).

In determining whether a state offense qualifies as a violent felony under the force clause, the Court generally employs the categorical approach described by the Supreme Court in Descamps v. United States, 570 U.S. 254 (2013). Under the categorical approach, the Court must examine whether the offense has as an *element* the "use, attempted use, or threatened use of physical force against the person of another," and must not consider "the particular facts underlying the defendant's conviction."

United States v. Burns-Johnson, 864 F.3d 313, 316 (4th Cir.) (citing

Descamps, 133 S.Ct. at 2283), cert. denied, 138 S. Ct. 461 (2017).

> The categorical approach directs courts to examine only the elements of the state offense and the fact of conviction, not the defendant's conduct. In conducting this analysis, we focus on the minimum conduct required to sustain a conviction for the state crime, although there must be a realistic probability, not a theoretical possibility, that a state would actually punish that conduct. We look to state court decisions to determine the minimum conduct needed to commit an offense and to identify the elements of a state common law offense. We then compare those elements to the definition of violent felony in the force clause.

United States v. Doctor, 842 F.3d 306, 308-09 (4th Cir. 2016) (internal

citations, quotation marks, and footnote omitted), cert. denied, 137 S. Ct.

1831 (2017).

At the time of the Petitioner's 1989 conviction for aggravated robbery,

the Tennessee robbery statute criminalized "the intentional or knowing taking

from the person of another property of any value by violence or putting the

person in fear." Tenn. Code Ann. § 39-13-401 (1989 Supp.). According to

Tennessee law, a robbery constituted an aggravated robbery if it was: "(1)

[a]ccomplished with a deadly weapon or by display of any article used or

fashioned to lead the victim to reasonably believe it to be a deadly weapon;

or (2) [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402 (1989 Supp.).

In United States v. Mitchell, 743 F.3d 1054 (6th Cir. 2014), the Sixth Circuit Court of Appeals held that the 2003 version of Tennessee's robbery statute – which is similar to the 1989 version in that it also criminalized "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" – categorically required the use, attempted use or threatened use of violent physical force and therefore constituted a predicate offense under the ACCA. 743 F.3d at 1058-60. Relying on Mitchell, the Sixth Circuit later held in United States v. Lester, 719 F. App'x 455 (6th Cir. 2017), that Tennessee's aggravated robbery offense also constitutes a violent felony under the ACCA. 719 F. App'x at 458 ("If, as we held in Mitchell, a mine-run robbery under Tennessee law always involves violent physical force, then its aggravated counterpart – the same crime, but committed with a deadly weapon or resulting in serious bodily injury – must also involve violent physical force.") (internal citation omitted).

The Petitioner argues that Mitchell's analysis is inconsistent with the Fourth Circuit's analysis in United States v. Gardner, 823 F.3d 793 (4th Cir. 2016), in which the Court held that "the minimum conduct necessary to sustain a conviction for North Carolina common law robbery does not

necessarily include the use, attempted use, or threatened use of force capable of causing physical pain or injury to another person, as required by the force clause of the ACCA."  823 F.3d at 804 (internal quotation marks and citation omitted).  [Doc. 11 at 4].  Subsequent to the parties' briefing of this issue, however, the Fourth Circuit held that the Gardner decision was abrogated in light of the Supreme Court's decision in Stokeling v. United States, 139 S. Ct. 544 (2019).  In Stokeling, the Supreme Court held that, in determining whether a particular robbery offense satisfies the ACCA's force clause, the critical factor is whether the offense requires that the offender "physically overcame the victim's resistance, 'however slight' that resistance might be…." Id. at 550 (citations omitted).  In light of Stokeling, the Fourth Circuit has since held that North Carolina common law robbery does in fact satisfy the "force" requirement of the ACCA.  See United States v. Dinkins, 928 F.3d 349, 355 (4th Cir. 2019).  The Petitioner's argument that Gardner compels a different conclusion than the one reached by the Sixth Circuit in Lester is without merit.

The Petitioner further argues that the offense of aggravated robbery does not satisfy the force clause because the statute criminalizes conduct even if the offender did not intend to use or threaten to use physical force. [Doc. 1 at 13-14].  The Fourth Circuit faced and rejected a similar argument

in <u>United States v. Doctor</u>, 842 F.3d 306 (4th Cir. 2016), where the defendant argued that the offense of South Carolina robbery could not qualify as a violent felony because "it does not contain an explicit mens rea requirement as to the force or intimidation element."  842 F.3d at 311.  The Fourth Circuit rejected that argument, noting that the defendant "fail[ed] to cite a single case in South Carolina where a defendant negligently or recklessly used force in the commission of a robbery, or where a defendant negligently or recklessly intimidated a victim."  <u>Id.</u> (footnote omitted).

Similarly, the Petitioner in the present case has not cited a single Tennessee decision where a defendant negligently or recklessly used force in the commission of an aggravated robbery, or where a defendant negligently or recklessly intimidated a victim.[5]  As the <u>Doctor</u> Court noted,

---

[5] In support of his argument, the Petitioner cites only one Tennessee decision, <u>State v. Guy</u>, 165 S.W.3d 651 (Tenn. Crim. App. 2004). In <u>Guy</u>, the Tennessee Court of Criminal Appeals noted that "[t]he knowing mens rea of robbery refers to the 'knowing theft.' The knowing mens rea of theft refers to 'knowingly obtain[ing] or exercis[ing] control over the property.' The focus of the proscribed conduct is not upon its result."  165 S.W.3d at 660 (quoting <u>State v. Marcus Webb</u>, No. W2002–00614-CCA-R3-CD, 2003 WL 214451, at *5 (Tenn. Crim. App., Jan. 29, 2003)).  This observation was made in the context of reviewing a trial court's jury instructions providing the result-of-conduct and nature-of-conduct definitions of "intentional" and the result-of-conduct, nature-of-conduct, and nature-of-circumstances definitions of "knowing" in a trial for charges of felony murder and robbery. The Court of Criminal Appeals concluded that the trial court did not err in that regard. <u>Guy</u>, 165 S.W.3d at 661.  The <u>Guy</u> decision does not involve the alleged negligent or reckless use of force in the commission of an aggravated robbery and therefore does not support the Petitioner's hypothetical argument that a defendant could be prosecuted for aggravated robbery under Tennessee law where the use of force was performed negligently or recklessly.

"[t]his is unsurprising because the intentional taking of property, by means of violence or intimidation sufficient to overcome a person's resistance, must entail more than accidental, negligent, or reckless conduct." 842 F.3d at 311. Given the absence of any case law to support the Petitioner's argument that the use of force in committing an aggravated robbery under Tennessee law could be performed negligently or recklessly, the Court concludes that "there is not a realistic probability that [Tennessee] would punish such conduct." Id.

For all these reasons, the Court concludes that the Petitioner's conviction for Tennessee aggravated robbery still constitutes a predicate offense as a violent felony under the ACCA.

## 2. Tennessee Aggravated Assault

The Court next turns to the offense of aggravated assault. At the time of the Petitioner's conviction in 1987, Tennessee law defined the crime of aggravated assault as follows:

> A person is guilty of the offense of aggravated assault, regardless of whether the victim is an adult, a child, or the assailant's spouse, if such person:
>
> (1) Attempts to cause or causes serious bodily injury to another willfully, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
>
> (2) Attempts to cause or willfully or knowingly causes bodily injury to another with a deadly weapon;

(3) Assaults another while displaying a deadly weapon or while the victim knows such person has a deadly weapon in his possession;

(4) Being the parent or custodian of a child of the custodian of an adult, willfully or knowingly fails or refuses to protect such child or adult from an aggravated assault described in subdivisions (1), (2), or (3) above; or

(5) After having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit a battery against an individual or individuals, attempts to cause or causes bodily injury or commits or attempts to commit a battery against such individual or individuals.

Tenn. Code Ann. § 39-2-101(b) (Supp. 1986).

While the categorical approach is generally applicable in determining whether a state offense qualifies as a violent felony under the force clause, a modification to the categorical approach is required where the state statute defining the offense is "divisible." Descamps, 570 U.S. at 257. In the case of a divisible statute, the Court uses the "modified categorical approach," whereby the Court may consider a limited set of documents to determine the basis of the conviction. United States v. Covington, 880 F.3d 129, 132 (4th Cir.), cert. denied, 138 S. Ct. 2588 (2018). A statute is divisible if it "consists of multiple, alternative elements creating several different crimes, some of

which would match the generic federal offense and others that would not." United States v. Vinson, 805 F.3d 120, 123 (4th Cir. 2015) (en banc) (citation and internal quotation marks omitted). Thus, a crime is divisible "only if it is defined to include multiple alternative *elements* (thus creating multiple versions of a crime), as opposed to multiple alternative *means* (of committing the same crime)." Omargharib v. Holder, 775 F.3d 192, 198 (4th Cir. 2014) (emphases in original). "Elements, as distinguished from means, are factual circumstances of the offense the jury must find unanimously and beyond a reasonable doubt." Id. at 198-99 (citation and internal quotation marks omitted).

The subsections of § 39-2-101(b) clearly set out alternative elements for committing aggravated assault. See McGee v. United States, No. 16-1111-JDT-egb, 2018 WL 2170198, at *4 (W.D. Tenn. May 10, 2018) (finding 1986 version of Tenn. Code Ann. § 39-2-101(b) to be divisible). Therefore, the Court concludes that the statute is divisible, at least between subsections (1), (2), (3), (4), and (5). The statute is not divisible, however, with regard to the levels of *mens rea* (intentional, knowing or reckless) set forth in each of the subsections. See Hadaway v. United States, No. 2:05-CR-98-JRG-1, 2017 WL 1393739, at *5 (E.D. Tenn. Apr. 18, 2017).

Here, the Indictment charged the Petitioner with "willfully, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life caus[ing] serious bodily injury to Kenny Hill in violation of Tennessee Code Annotated § 39-2-101 and against the peace and dignity of the State of Tennessee." [CV Doc. 1-2: Indictment]. The language of the Indictment clearly tracks the 1986 version of § 39-2-101(b)(1), which criminalized causing or attempting to cause "serious bodily injury to another willfully, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

The Petitioner argues that his conviction under § 39-2-101(b)(1) fails to satisfy the force clause because the statute (1) does not require the *use* of violent physical force and (2) does not require a *mens rea* element of intentional or knowing conduct.

In arguing that the Tennessee aggravated assault statute does not require the use of violent physical force, the Petitioner relies on the Fourth Circuit's decision in United States v. Torres-Miguel, 701 F.3d 165 (4th Cir. 2012). In that case, the Fourth Circuit examined a California statute which criminalized a threat "to commit a crime which will result in death or great bodily injury." Id. at 167-68. The Fourth Circuit held that the offense did not constitute a crime of violence under the Guidelines, reasoning that a crime

21

may result in death or serious injury without the use of physical force, such as in a case of poisoning. Id. at 168-69. The Petitioner argues that the same is true of § 39-2-101. The Supreme Court, however, has rejected the rationale of Torres-Miguel, holding that the "act of employing poison knowingly as a device to cause physical harm" constitutes the use of violent force. United States v. Castleman, 572 U.S. 157, 171 (2014); see also In re Irby, 858 F.3d 231, 238 (4th Cir. 2017) (recognizing that Torres-Miguel's distinction "between indirect and direct applications of force . . . no longer remains valid" in light of Castleman).

Here, the Petitioner was convicted of causing serious bodily injury to another. "Causing bodily injury to another necessarily requires the application of violent physical force…." Umaña v. United States, 229 F. Supp. 3d 388, 393 (W.D.N.C. 2017) (citing Castleman, 572 U.S. at 174) (Scalia, J., concurring in part and concurring in the judgment). Accordingly, the Petitioner's argument that his Tennessee aggravated assault offense did not involve the use of violent physical force is rejected.

Next, the Petitioner argues that his aggravated assault offense does not constitute a "violent felony" because the offense could be committed with a *mens rea* of recklessness. In so arguing, the Petitioner relies on the Fourth Circuit's decision in United States v. Vinson, 805 F.3d 120, 125 (4th Cir.

2015), in which the Court held that the force clause of § 921(a)(33)(A) requires an intentional (as opposed to negligent or reckless) use of force. Subsequent to Vinson, however, the Supreme Court decided Voisine v. United States, 136 S. Ct. 2272 (2016). In Voisine, the Supreme Court held that the "use of physical force" in 18 U.S.C. § 922(g)(9) includes the reckless use of physical force. 136 S. Ct. at 2278-79. Although the Court in Voisine expressly declined to resolve the issue of whether reckless behavior could constitute the use of force under other provisions such as 18 U.S.C. § 16, see 136 S. Ct. at 2280 n.4, the Government urges that Voisine at least *suggests* that an offender may use physical force recklessly under the ACCA. [Doc. 10 at 5-6].

The Sixth Circuit Court of Appeals previously has held that, because § 39-2-101(b) could be violated through reckless conduct, it was not categorically a violent felony under the force clause of the ACCA. See United States v. McMurray, 653 F.3d 367, 373-76 (6th Cir. 2011). Following Voisine, however, the Sixth Circuit ruled that a mental state of recklessness is sufficient to qualify a conviction as a crime of violence under U.S.S.G. § 4B1.2. United States v. Verwiebe, 874 F.3d 258, 262 (6th Cir. 2017), cert. denied, 139 S. Ct. 63 (2018). The Sixth Circuit subsequently applied Verweibe specifically to the Tennessee aggravated assault statute,

concluding that a reckless aggravated assault constitutes a crime of violence under the force clause of § 4B1.2.  See United States v. Harper, 875 F.3d 329, 330 (6th Cir. 2017), cert. denied, 139 S. Ct. 53 (2018).  In 2018, the Sixth Circuit in Davis v. United States, relying on Verweibe and Harper, concluded that the Tennessee aggravated assault statute[6] is categorically a crime of violence under the force clause of the ACCA as well.  Davis, 900 F.3d 733, 736 (6th Cir. 2018) ("Although both Verwiebe and Harper dealt with the use-of-force clause under U.S.S.G. § 4B1.2, their holdings apply equally to the ACCA's use-of-force clause because both clauses have consistently been construed to have the same meaning."), cert. denied, 139 S. Ct. 1374 (2019).  The Court finds the reasoning of the Sixth Circuit Court of Appeals persuasive and therefore concludes that the Petitioner's aggravated assault conviction constitutes a violent felony under the force clause.[7]

_____

[6] The Court in Davis examined the 1990 version of the Tennessee aggravated assault statute, codified at Tenn. Code Ann. § 39-13-102 (1990).  The substantive provisions of the 1990 version and the 1987 version under which the Petitioner was convicted are substantially similar in that both statutes criminalize intentional, knowing or reckless conduct that causes bodily injury to another.  Compare Tenn. Code Ann. § 39-13-102 (1990) (incorporating definition of regular assault codified at Tenn. Code Ann. § 39-13-101(a)(1)) with Tenn. Code Ann. § 39-2-101(b)(1) (Supp. 1986).

[7] The Petitioner also cites United States v. Townsend, 886 F.3d 441 (4th Cir. 2018), for the proposition that "use of force" within the meaning of the ACCA "means to act with a mens rea more culpable than negligence or recklessness."  886 F.3d at 444-45 (citing Leocal v. Ashcroft, 543 U.S. 1, 11 (2004), and Vinson, 805 F.3d at 125-26).  Townsend, however, involved the North Carolina offense of assault with a deadly weapon with intent

Even if the Petitioner were correct, however, that an offense committed with a *mens rea* of mere recklessness could not constitute a violent felony, the Court would still find that the Petitioner's aggravated assault would constitute a predicate offense. The Petitioner was convicted of causing serious bodily injury to another willfully, knowingly or recklessly "under circumstances manifesting extreme indifference to the value of human life." A recklessness "manifesting extreme indifference to the value of human life" is akin more to the concept of actual malice than mere recklessness. See Umaña v. United States, 229 F. Supp. 3d 388, 395 (W.D.N.C. 2017) ("Under the [Model Penal Code], 'malice aforethought' may be established by conduct committed recklessly under circumstances manifesting extreme indifference to the value of human life. Thus, generic 'malice aforethought' requires a higher degree of intent than 'reckless' conduct.") (internal citation omitted). As such, the Court concludes that the Tennessee aggravated assault statute requiring reckless conduct "under circumstances manifesting

---

to kill inflicting serious injury (AWDWIKISI), not the Tennessee offense of aggravated assault. Moreover, the Fourth Circuit's statement regarding recklessness was not the holding of that decision or even particularly relevant to the Court's analysis. The Townsend Court held that AWDWIKISI *is* a crime of violence, focusing primarily on the question of whether the offense could be satisfied by a showing of culpable negligence. See id. at 446. This Court, therefore, concludes that Townsend provides little support for the Petitioner's argument.

extreme indifference to the value of human life" requires a higher degree of intent than mere recklessness.

Thus, for the reasons stated here, the Court finds that Petitioner's prior conviction in Tennessee for aggravated assault still qualifies as a violent felony for purposes of the ACCA.

## IV. CONCLUSION

Having concluded that the Petitioner's convictions for Tennessee aggravated assault and Tennessee aggravated robbery were properly identified as ACCA predicate offenses, the Court further concludes that the Petitioner's ACCA designation was then correct and remains so after Johnson. For these reasons, the Court denies and dismisses the motion to vacate.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a

debatable claim of the denial of a constitutional right. <u>Slack v. McDaniel</u>, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Government's Motion to Dismiss [CV Doc. 7] is **GRANTED**, and the Petitioner's Motion to Vacate [CV Doc. 1] is **DENIED and DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: August 28, 2019

Martin Reidinger
United States District Judge